UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | |
|---|---|
| **Insights International Holdings, LLC,** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**Radius Product Development, Inc.,** )<br>)<br>**Defendant.** )<br>) | Case No.: _____<br><br>**DEMAND FOR JURY TRIAL** |

**Serve:**
Radius Product Development, Inc.
c/o CT Corporation System, Registered Agent
155 Federal Street, Suite 700
Boston, MA 02110

## COMPLAINT

COMES NOW Plaintiff, Insights International Holdings, LLC, a Virginia limited liability company doing business as "NanTrak Industries" ("NanTrak"), by counsel, for its Complaint against Defendant, Radius Product Development, Inc., a Massachusetts corporation ("Radius"), and states as follows:

### The Parties

1. NanTrak is a Virginia limited liability company with its principal office located at 601 N. Mechanic St., Suite 414 Franklin, Virginia 23851.

2. Radius is a Massachusetts corporation with its principal office located at 200 Union Street, Clinton, Massachusetts 01510.

### Nature of the Case

3. This dispute arises out of a Master Services Agreement for a developer, Radius, to design and develop a pre-production prototype of NanTrak's patented technology under a firm

fixed-fee arrangement. Radius breached the Master Services Agreement when it refused to continue providing services unless NanTrak paid at least several hundred thousand dollars *over* the fixed-fee after Radius discovered that a fundamental aspect of its design—the coin cell battery—would not work with the technology and would require Radius to back-track to the first phase of its development. Radius has refused to complete the services under the Master Services Agreement and has failed to return all of NanTrak's confidential information and work product to NanTrak.

## Subject Matter Jurisdiction

4. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because there is complete diversity and the amount in controversy, excluding interest and costs, exceeds $75,000.

## Personal Jurisdiction

5. Personal jurisdiction over Radius exists in Virginia because, among other reasons, Radius transacts business in this Commonwealth, has contracted to supply services for NanTrak in Virginia, and the Defendant consented in Section 9.4 of the mutually executed Agreement (defined below) to the jurisdiction of the federal courts located in the City of Norfolk, Commonwealth of Virginia.

## Venue

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to this cause of action arose in this judicial district and the parties consented to the exclusive venue of the federal courts located in the City of Norfolk, Commonwealth of Virginia in Section 9.4 of the Agreement (defined below).

**Statement of Facts**

7. NanTrak is an innovation firm that developed patented technology that solves a common problem in the hunting industry.

8. Radius is an innovation and development firm.

9. On or about September 26, 2017, the parties entered into a Consulting Services Agreement ("Agreement") for Radius to provide technology and software production services for NanTrak's "RakBak" technology pursuant to the terms of the Agreement.

10. A true and correct copy of the Agreement is attached as **Exhibit A**.

11. The Agreement provided for Radius to perform and deliver its services and work product "in multiples phases of completion as described in the applicable Statement of Work (each a "Phase" collective, the "Phases")." *See* Ex. A, Sec. 1.2(a).

12. The Agreement also provided for a "fixed, agreed upon cost of performance of each Phase" to be paid by NanTrak to Radius. *See* Ex. A, Sec. 4.3.

13. Radius broke the services down into four Phases: Phase 3A (Discover Phase), Phase 3B (Design Phase), Phase 3C (Develop Phase), and Phase 3D (Deliver Phase). Each Phase included various "Deliverables" (as defined in Ex. A, Sec. 1.2(b)) that Radius was to complete during that Phase.

14. Radius initially estimated that all four phases would be completed in 34-37 weeks.

15. Radius took 11 weeks to complete Phase 3A, instead of the proposed 4 weeks.

16. NanTrak paid Radius, timely and in full, a total of $146,000 for completion of Phase 3A.

17. During Phase 3A, and pursuant to Phase 3A Deliverables, Radius determined to utilize a coin cell battery in the design of the RakBak technology.

18. Prior to Phase 3A, NanTrak warned Radius that NanTrak's prior developer also attempted to use a coin cell battery in the design and it would not work. Nevertheless, Radius proceeded with the coin cell battery.

19. Radius took 15 weeks to complete Phase 3B, instead of the proposed 7 weeks.

20. NanTrak paid Radius, timely and in full, a total of $394,200 for completion of Phase 3B.

**Radius Discovers the Defective Design and Halts Work During Phase 3C**

21. The objective of Phase 3C was to build and test prototype units of the design on both a test lab and in the field.

22. Radius started Phase 3C on or about June 18, 2018 and Radius estimated it would be completed in 13 weeks.

23. The fixed-fee price for Phase 3C was $567,000.

24. Throughout the term of the Agreement, Radius continued to assure NanTrak that the design would work and that the prototype would meet NanTrak's requirements and specifications.

25. On or about October 19, 2018, Radius notified NanTrak that it stopped work on Phase 3C after 20 weeks due to exceeding their firm fixed price budget. At that time, Radius also notified NanTrak, for the first time, that Radius' coin cell battery design did not work with the prototype.

26. As of October 19, 2018, NanTrak had paid and delivered to Radius $226,800 for partial completion of Phase 3C, due to Radius only submitting 3 of the 15 Deliverables for Phase 3C.

27. After discussions between the two parties, Radius agreed to re-start work and conduct a two-week assessment of the functionality of the prototype and what additional efforts would be required to complete Phase 3C and deliver a minimum viable product.

28. On or about November 5, 2018, Radius started work on the two-week assessment of the minimum viable product options.

29. On November 27, 2018, Radius' Director of Engineering, Bob Lang, confirmed via email to NanTrak that "the assessment is that the coin cell batteries will not work."

30. On December 4, 2018, Radius presented its minimum viable options to NanTrak after completing its two-week assessment. Again, Radius confirmed that that the coin cell batteries will not work in the RakBak technology.

31. The defective design with the coin cell battery constituted a non-conforming Deliverable under Schedule 3.1 of the Agreement.

32. As a result of Radius' defective design with the coin cell battery, the RakBak technology would not work unless Radius went back to Phase 3A to re-determine the design requirements and redesign the same.

33. On or about December 4, 2018, Radius informed NanTrak that it would not continue work under the Agreement unless NanTrak paid an additional $362,000 above the firm fixed price for Radius to complete Phase 3C.

34. On January 14, 2019, NanTrak delivered a Notice of Default letter to Radius and demanded Radius' performance of the Agreement. The Notice of Default Letter is attached as **Exhibit B**.

35. Following the Notice of Default, Radius continued to conduct some testing in a very limited capacity.

36. Around May 2019, Radius ceased all work on NanTrak's RakBak technology and stopped performing under the Agreement.

**NanTrak Terminates the Agreement**

37. On April 28, 2020, NanTrak, by counsel, terminated the Agreement, effective immediately, by delivering a Notice of Termination of Consulting Services Agreement letter to Radius ("Termination Letter"). The Termination Letter is attached as **Exhibit C**.

38. The Termination Letter demanded Radius reimburse all Compensation (as defined in the Agreement), and return all confidential information, materials of work product, and deliverables, whether complete or in progress as of the termination date, by May 12, 2020.

39. To date, Radius has failed and refused to reimburse NanTrak for any Compensation or return any of NanTrak's confidential information, materials of work product, or deliverables.

**COUNT I**
**BREACH OF CONTRACT – FAILURE TO REIMBURSE COMPENSATION**

40. NanTrak repeats and re-alleges the foregoing allegations as if fully set forth herein.

41. The Agreement constitutes a valid and binding contract on NanTrak and Radius.

42. Under the Agreement, Radius had an obligation to deliver certain Deliverables associated with the RakBak technology in conformity with the Agreement and applicable statements of work.

43. The Agreement establishes a firm fixed price for the Deliverables and a duty owed by Radius to cure any defects at its sole cost.

44. Radius failed to deliver certain conforming Deliverables associated with the power source for the RakBak technology.

45. In January 2019, Radius refused, and continues to refuse, to perform its duties under Schedule 3.1 of the Agreement and correct the defects in the non-conforming Deliverables and redeliver the same at Radius' sole cost and expense.

46. On April 28, 2020, NanTrak terminated the Agreement pursuant to Schedule 3.1.3(a) of the Agreement.

47. Schedule 3.1.3 of the Agreement provides:

> Upon delivery of notice under either Section 3(a) or (b) of this Schedule 3.1 above by [NanTrak], [Radius] shall reimburse [NanTrak] all Compensation amounts paid by Client up to do the date of termination under Section 3(a) above or acceptance and direction to finalize the subsequent Deliverable under Section 3(b) above specifically relating only to the specific non-conforming Deliverable or non-curable breach hereunder.

48. During the term of the Agreement, NanTrak paid and delivered a total of $620,800.00 in Compensation to Radius under the Agreement.

49. The defective design in the RakBak's battery power source resulted in numerous non-conforming Deliverables in Phase 3A and 3B.

50. Radius failed to deliver any Deliverables under Phase 3C except 3 Deliverables related to status reports.

51. To date, Radius has failed and refused to reimburse NanTrak for any of the Compensation paid by NanTrak.

52. As a direct and proximate result of Radius' breach of Schedule 3.1.3 of the Agreement, NanTrak has been damaged in the amount of $620,800.00 in actual damages, plus interest, and its reasonable attorneys' fees pursuant to Section 9.10 of the Agreement.

## COUNT II
## BREACH OF CONTRACT – FAILURE TO RETURN PROPERTY

53. NanTrak repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

54. The Agreement constitutes a valid and binding contract on NanTrak and Radius.

55. Section 6.3 of the Agreement provides as follows:

> Upon the termination for any or no reason of this Agreement: … (b) [Radius] shall immediately discontinue use of and shall return to [NanTrak] promptly all Confidential Information and materials of Work Product of [NanTrak] and all copies, portions, and abstracts thereof, that are in its possession or under its control; (c) [Radius] shall deliver to [NanTrak] all Deliverables and Work Product, whether complete or in progress, as of the termination date.

56. NanTrak terminated the Agreement on April 28, 2020.

57. In its Termination Letter, NanTrak demanded Radius return all of NanTrak's "confidential information, materials of work product, and deliverables, whether complete or in progress as of the termination date" no later than May 12, 2020.

58. To date, Radius has failed and refused to return any of NanTrak's confidential information, materials of work product, or Deliverables.

59. Radius' conduct constitutes a breach of Section 6.3 of the Agreement.

60. As a result of Radius' breach of Section 6.3 of the Agreement, NanTrak has suffered damages in that it's been deprived of the use and enjoyment of its property, and the ability to utilize the same in NanTrak's further efforts to develop its RakBak technology.

## COUNT III
## CONVERSION

61. NanTrak repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

62. During the term of the Agreement, Radius was in possession of certain Confidential Information belonging to NanTrak, as well the Deliverables, including materials of Work Product.

63. At the time the Agreement was terminated, the Confidential Information and Deliverables were owned exclusively by NanTrak.

64. Upon termination of the Agreement, Radius had no right to exercise control over the Confidential Information and Deliverables.

65. Upon termination of the Agreement, Radius willfully, wantonly, and maliciously exercised possession of the Confidential Information and Deliverables to the exclusion of NanTrak.

66. As a result of Radius' wrongful conduct, NanTrak has suffered damages in that it's been deprived of the use and enjoyment of its property, and the ability to utilize the same in NanTrak's further efforts to develop its RakBak technology.

## **Damages and Relief Requested**

WHEREFORE, NanTrak, by counsel, hereby moves and prays this Court enter judgment against Radius as follows:

1. Actual damages in the amount of $620,800.00;

2. Preliminary and injunctive relief against Radius, compelling Radius to immediately discontinue use of, and return to NanTrak all Confidential Information and materials of Work Product and all copies, portions, and abstracts therefore, that are in Radius' possession or under its control; and all Deliverables and Work Production, whether complete or in progress, as of the termination date of the Agreement;

3. Award NanTrak its reasonable attorneys' fees and costs pursuant to Section 9.10 of the Agreement;

4. Such other and further relief as this Court may deem just and equitable.

## **JURY TRIAL DEMAND**

Pursuant to Federal Rule of Civil Procedure 38 and Local Rule 38, the plaintiff demands a trial by jury.

Respectfully Submitted,

**INSIGHTS INTERNATIONAL HOLDINGS, LLC**

By: ___/s/ Julia A. Rust___
     Of Counsel

Julia A. Rust, Esq. (VSB # 87270)
Samuel K. Walsh, Esq. (VSB # 92591)
PIERCE MCCOY, PLLC
101 West Main Street, Suite 101
Norfolk, Virginia 23510
Telephone: (757) 216-0226
Facsimile: (757) 257-0387
julia@piercemccoy.com
sam@piercemccoy.com
*Counsel for Plaintiff*